**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JODIE CHURCHILL,**
o/b/o **ZWC,**

              Plaintiff,            1:12-cv-1101
                                                            (GLS)

          v.

**COMMISSIONER OF SOCIAL**
**SECURITY,**

              Defendant.
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter M. Margolius        PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, NY 12414

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    SANDRA M. GROSSFELD
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jodie Churchill o/b/o ZWC, challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On September 18, 2009, Churchill protectively filed an application for SSI under the Social Security Act ("Act") on behalf of her minor son ZWC, alleging disability since October 9, 1998. (Tr.[1] at 43, 92-94.) After the application was denied, Churchill requested a hearing before an Administrative Law Judge (ALJ), which was held on January 20, 2011. (*Id.* at 28-42, 44-48.) On April 8, 2011, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-4, 13-27.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

Churchill commenced the present action by filing a complaint on July 12, 2012, seeking review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 17.)

## III. Contentions

Churchill avers that the Commissioner's decision is not supported by substantial evidence and was arrived at through the application of incorrect legal standards. (Dkt. No. 11 at 3-6.)[2] Specifically, Churchill contends that the ALJ erred in: (1) deciding that ZWC's impairments did not functionally equal a listed impairment; and (2) failing to develop the record. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence. (Dkt. No. 17 at 2-9.)

## IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*Id.* at 1; Dkt. No. 11 at 1-2.)

---

[2] The court notes that Churchill's counsel has neglected to paginate the brief in compliance with Local Rule 10.1(a). *See* General Order No. 18.

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of eighteen are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, No. 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI. Discussion

### A. Functional Equivalency

According to Churchill, the ALJ erred in finding that ZWC did not have a marked[4] limitation in certain domains of functioning. (Dkt. No. 11 at

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) of Title 42 applicable to judicial review of SSI claims.

[4] A "marked" limitation is one that "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities" within the given domain, while an "extreme" limitation "interferes very

4

3-5.) Specifically, Churchill argues that ZWC has marked limitations in the moving about and manipulating objects domain, and the health and physical well-being domain. (*Id.*) On the other hand, the Commissioner contends, and the court agrees, that the ALJ's functional equivalency analysis was supported by substantial evidence. (Dkt. No. 17 at 4-8.)

    1.    *Moving About and Manipulating Objects*

This domain contemplates a child's ability to "move his body from one place to another," as well as "move and manipulate things." 20 C.F.R. § 416.926a(j). School-age children should be able to move at an efficient pace about [their] school, home, and neighborhood[, and] enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports." *Id.* § 416.926a(j)(2)(iv). In addition, developing fine motor skills should enable [the child] to do things like use many kitchen and household tools independently, use scissors, and write." *Id.*

Here, the ALJ found that ZWC has a less than marked limitation in this domain because, although he is excluded from physical education and deemed unable to carry his books, Churchill reported that ZWC's neck pain

---

seriously" with those abilities. 20 C.F.R. § 416.926a(e)(2)(i), (3)(i).

5

was caused by fighting with his older brother, evincing his ability to play actively. (Tr. at 25.) Further, ZWC's treating physician at Albany Medical Center could not find a correlation of alleged symptoms to findings on an MRI. (*Id.*) Churchill argues that a teacher questionnaire, completed in December 2009, supports a finding that ZWC had a marked limitation in this domain. (Dkt. No. 11 at 3; Tr. at 118.) Further, the 2010-2011 Taconic Hills School District Section 504 Accommodation plan indicates that ZWC has "severe limitations with any type of physical lifting, carrying, or participation in physical education." (Tr. at 236; Dkt. No. 11 at 3.) Finally, Churchill points to an October 2009 note from Valerie Stanley, a pediatric nurse practitioner at The Neurosciences Institute, recommending that ZWC "not participate in any sports activities due to his headaches and his other medical diagnoses." (Tr. at 404; Dkt. No. 11 at 3.)[5]

---

[5] This October 2009 note was not contained in the record before the ALJ, but was submitted to the Appeals Council. (Tr. at 4, 404.) Notably, when "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (internal quotation marks and citation omitted). Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id.* at 45-46. In any event, as the Commissioner points out, (Dkt. No. 17 at 8-9), the ALJ acknowledged that ZWC was unable to participate in physical education or carry his school books. (Tr. at 21-22,

Notably, "whether there is substantial evidence supporting the [claimant]'s view is not the question"; instead, the court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, No. 12-4186-cv, 2013 WL 3214890, at *1 (2d Cir. June 27, 2013). Here, a March 2008 MRI of ZWC's brain and cervical spine were normal, and, in March and June 2010, treating neurologist Matthew Adamo noted that imaging studies revealed ZWC's thoracic hydromyelia[6] was asymptomatic and did not explain his symptoms. (Tr. at 202-03, 261-62, 267-68.) In March 2008, it was noted that ZWC's headaches and neck pain did not cause him to miss school or "other outside activities," and his favorite classes at school were "PE and recess." (*Id.* at 211.) In August

---

25, 118.)

[6] "Hydromyelia refers to an abnormal widening of the central canal of the spinal cord that creates a cavity in which cerebrospinal fluid (commonly known as spinal fluid) can accumulate." *Hydromyelia Information Page*, National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/hydromyelia/hydromyelia.htm (last visited Nov. 12, 2013). Hydromyelia is sometimes used interchangeably with syringomyelia, a disorder in which a cyst, called a syrinx, forms within the spinal cord. *See id.*; *Syringomyelia Fact Sheet*, National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/syringomyelia/details.htm (last visited Nov. 12, 2013). ZWC's treatment notes refer to both hydromyelia and syrinx. (*Compare* Tr. at 261, *with id.* at 268.)

2008, ZWC was examined for complaints of neck pain and headaches. (*Id.* at 205-06.) It was noted that he had not missed any school due to his headaches and, upon examination, he failed to complain of any pain or discomfort in his neck or back, causing his doctor to note that his neck pain "appear[s] to be resolved or not present today." (*Id.*) In September 2009, ZWC explained to his doctor that his neck pain occurred after he had been "fooling around" or "play[ing] his DS for a long time." (*Id.* at 191.) At this time, ZWC was given a note for school allowing him a second set of books to keep at home, as a heavy backpack would aggravate his neck discomfort and headaches. (*Id.* at 192.) Thereafter, nurse practitioner Stanley excused him from participating in sports activities due to his headaches and "other medical diagnoses." (*Id.* at 404.) January and April 2010 treatment notes indicate that ZWC continued to function in school despite his headaches, and in fact, was placed on the Honor Roll. (*Id.* at 270-72, 325.)

In May 2010, after undergoing a sleep evaluation, ZWC was sleeping better, no longer waking with headaches, and behaving better in school. (*Id.* at 263.) Churchill reported that ZWC was still experiencing occasional headaches, but it was noted that "[i]t is very difficult to pin both [Churchill]

and [ZWC] down to exactly how many [headaches he suffers] per week." (*Id.*)  At this time, treating pediatric nurse practitioner Janet Morgan expressed concern that ZWC's complaints of headaches and neck pain were a means of "school avoidance." (*Id.* at 264.)  Morgan further noted that Churchill "believes that much of [ZWC's] back and neck pain is related to fooling around and fighting with his older brother." (*Id.* at 265.)  In November 2010, ZWC reported that he did not experience headaches while in school, and recalled getting a headache "after playing with the Wii, while dancing." (*Id.* at 394.)  In April 2011, Churchill reported that ZWC's headaches had been increasing in frequency, however, ZWC refused to answer any questions regarding his headaches. (*Id.* at 390-92.) Importantly, throughout the record ZWC's physical examinations were benign, and his motor strength, sensation, station and gait, reflexes, and coordination were normal. (*Id.* at 189, 192, 196, 199, 201, 203, 206, 209, 213, 259, 391, 395, 400.)

    Accordingly, while notes from treating sources prevented ZWC from carrying his school books or participating in physical education due to headaches and neck pain, the ALJ's conclusion that ZWC suffers less than a marked limitation in this domain is supported by the objective medical

9

evidence, treatment notes, and Churchill's and ZWC's own reports. (*Id.* at 118, 192, 404.)

### 2. *Health and Physical Well-Being*

In this domain, the ALJ considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies " on a child's functioning that were not previously considered in the domain evaluating the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(*l*). Examples of limitations in this domain include: "generalized symptoms, such as weakness, dizziness, agitation . . . lethargy, . . . or psychomotor retardation[;] somatic complaints related to [the child's] impairments[;] limitations in [the child's] physical functioning because of [his] treatment[; and] exacerbations from one impairment or a combination of impairments that interfere with [the child's] physical functioning." 20 C.F.R. § 416.926a(*l*)(4)(i)-(iv). In addition, the ALJ may also determine that the child has a "marked" limitation if the child is "frequently ill because of [his] impairment(s) or [has] frequent[7]

---

[7] For purposes of this domain, "frequent" means that the child experiences "episodes of illness or exacerbations that occur on an average of [three] times a year, or once every [four] months, each lasting [two] weeks or more" or "episodes that occur more often than [three] times in a year or once every [four] months but do not last for [two] weeks, or

10

exacerbations of [his] impairment(s) that result in significant, documented symptoms or signs." *Id.* § 416.926a(e)(2)(iv).

In this case, the ALJ determined that ZWC has less than marked limitations in health and physical well-being because, although he requires medications for attention deficit hyperactivity disorder and other conditions, side effects from such medications "do not appear to have significantly impacted his functioning." (Tr. at 27.) The ALJ also relied on the December 2009 teacher questionnaire and Churchill's testimony, which did not indicate any significant limitations in this domain. (*Id.*) Churchill argues that the ALJ did not consider ZWC's chronic headaches and the ineffectiveness of multiple medications prescribed by his "neurologist group." (Dkt. No. 11 at 4.) Additionally, Churchill argues that her testimony supported a finding of marked limitations in this domain, as she testified that ZWC has bad headaches that result in vomiting, and various prescribed medications have not helped. (*Id.*)

As noted above, treatment notes from 2008 through 2010 indicate

---

occur less often than an average of [three] times a year or once every [four] months but last longer than [two] weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity." 20 C.F.R. § 416.926a(e)(2)(iv).

that ZWC's impairments did not interfere with his ability to function in school, and he did not suffer headaches while in school. (Tr. at 198, 205, 211, 270, 352, 394.) Further, ZWC's teachers and school nurse indicated that ZWC did not frequently miss school due to his impairments, and Churchill testified that ZWC's symptoms never required hospitalization. (*Id.* at 35, 114, 122-23.) Treatment records also indicate that ZWC was not forthcoming regarding his symptoms, and both Churchill and his treatment providers suspected that disciplinary problems might be the true cause of his complaints. (*Id.* at 263-65, 392.) Although Churchill testified that ZWC had difficulty sleeping, he was diagnosed with sleep apnea that was too mild to warrant any intervention. (*Id.* at 37, 198.) Indeed, after visiting a sleep clinic in April 2010 and making changes to ZWC's bedtime routine, Churchill reported ZWC's sleep greatly improved. (*Id.* at 330-31, 334-35.)

Accordingly, the ALJ's finding that ZWC suffered less than a marked limitation in the domain of health and physical well-being is supported by substantial evidence.

B.  **Development of the Record**

Churchill also contends that the ALJ failed to fully develop the record. (Dkt. No. 11 at 5.) Specifically, Churchill asserts that the ALJ should have

12

attempted to obtain an opinion from ZWC's current teacher as to how his impairments affected his level of functioning, especially in light of the fact that she appeared pro se at the administrative hearing. (*Id.*) The court disagrees.

Although the ALJ has an affirmative obligation to develop the administrative record, and, in fact, a "heightened duty" to develop the record when a claimant proceeds *pro se*, *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks and citations omitted), this duty is not without limit, *see Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 416.912(d) (stating that generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files his application). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Here, the ALJ had before him ZWC's treatment records dating back to 2002. (*See generally* Tr. at 144-409.) In addition, the ALJ obtained the opinion of ZWC's sixth grade teachers, guidance counselor, and school nurse, as well as the opinions of non-examining medical consultants D. Bostic, a pediatrics specialist, and psychologist J. Dambrocia. (*Id.* at 114-23, 223-29.) In this instance, the record fails to disclose any critical gaps sufficient to trigger the ALJ's duty to develop the record. While Churchill asserts that the ALJ should have contacted ZWC's seventh grade teacher for supplemental records, there is no indication that such records would have provided significant missing information. (Dkt. No. 11 at 5.)

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Churchill's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 4, 2013
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court